IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 25, 2005

## J. C. OVERSTREET, JR. v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2003-A-104     Cheryl Blackburn, Judge**

---

**No. M2005-00170-CCA-R3-PC - Filed December 20, 2005**

---

The petitioner appeals the denial of his post-conviction petition, contending that: (1) counsel was ineffective in failing to adequately inform him of the consequences of his plea; and (2) his pleas were coerced by counsel's assurances that he would be placed in the DeBerry Special Needs Facility. Upon review, we conclude that counsel explained the consequences of the pleas with the petitioner and that his plea was knowingly and voluntarily entered, as it was made clear to the him that placement was not part of his plea agreement but was within the discretion of the Department of Correction. Therefore, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID G. HAYES and NORMA MCGEE OGLE, JJ., joined.

Ryan C. Caldwell, Nashville, Tennessee, for the appellant, J. C. Overstreet, Jr.

Paul G. Summers, Attorney General and Reporter; Blind Akrawi, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Brian K. Holmgren, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Facts and Procedural History

The petitioner, J.C. Overstreet, Jr., pled guilty to rape of a child (a Class A felony) and entered a best interest plea to aggravated sexual battery (a Class B felony). Pursuant to the plea agreement, the petitioner was sentenced as a mitigated offender to thirteen and a half years for the charge of rape of a child and to eight years as a standard offender for the remaining charge of aggravated sexual battery. The sentences were ordered to be served concurrently at one hundred percent, pursuant to Tennessee Code Annotated section 39-13-523(b). Thereafter, the petitioner filed a pro se petition for post-conviction relief. Following the appointment of counsel and an evidentiary

hearing, the post-conviction court denied relief. On appeal to this court, the petitioner contends that: (1) trial counsel rendered ineffective assistance by failing to adequately convey the consequences of his pleas and his imposed sentence; and (2) trial counsel coerced his pleas by assuring him that he would be placed in DeBerry Special Needs Facility (DeBerry) due to his medical condition.

At the post-conviction hearing, the petitioner testified that trial counsel met with him approximately six times prior to his plea. He stated that he asked counsel about the factual basis of the charges against him and that he received varying answers which never gave him any clarification. The petitioner recalled that he believed he would be pleading to a twelve-year sentence at eighty-five percent release eligibility and that he did not want to plead to thirteen years at one hundred percent service but "was not told [he] could change his mind."

The petitioner testified that he could write but could not read well and that counsel explained the plea petition to him. He stated that he was under stress at the time of his plea and that he had previously been hospitalized four or five times for anxiety. He further noted that he suffers from high blood pressure, light strokes, and diabetes, all of which require medication. The petitioner stated that, for approximately seven months prior to his plea, he requested a jury trial but did not do so on the day of the hearing. He further testified that counsel told him that he would be housed at DeBerry as part of his plea agreement; however, he was never sent there.

When asked if his placement at DeBerry influenced his decision to plead guilty, the petitioner responded, "Well, it had an effect on it. I knowed [sic] I'd be close to my wife." The petitioner stated that he was experiencing numbness in his neck, arms, and legs at the time of the post-conviction hearing but had not received any treatment at the Department of Correction (DOC).

On cross-examination, the petitioner acknowledged that counsel discussed the State's evidence with him and that he knew his plea agreement was for a thirteen and one-half year sentence. He also testified that counsel read the plea petition to him and that he knew it was his option to plead or go to trial. The petitioner admitted that he told the trial court that counsel discussed the case with him, read the plea petition to him, and answered all questions to his satisfaction. He further acknowledged that he was given multiple opportunities to decline or to question the plea agreement in court but failed to do so. However, the petitioner indicated that counsel did not do everything the petitioner wanted her to do on his case. Finally, he testified that he thought he was going to get "good days" and be placed at DeBerry, but neither occurred.

Counsel testified that she and the petitioner discussed the factual allegations and reviewed the State's evidence. She indicated that the State's initial offer was sixteen years at one hundred percent service with the possibility of credit altering the release eligibility to eighty-five percent. However, counsel ultimately negotiated an effective sentence of thirteen and a half years. She testified that, although the petitioner was displeased with the length of the sentence, he would not indicate an acceptable offer but simply stated that he wanted a "lower" sentence. She further recalled that the petitioner was upset that there was no DNA evidence, but the victims did not have injuries that produced DNA evidence.

Counsel acknowledged that she discussed a placement at DeBerry with the petitioner and "frankly assumed that he would go [there]." She further noted that the issue was discussed at the plea hearing and that the trial court indicated that it was not a condition of the plea. Counsel stated that she explained to the petitioner that the ultimate decision as to placement rested with the DOC. She recalled that the petitioner spoke to her in the middle of the plea hearing and that she explained to him that he would have to either plead or go to trial. In conclusion, counsel testified that, while the petitioner was not pleased with the plea, it was entered voluntarily.

On cross-examination, counsel testified that although the petitioner could not read or write well, he sent letters to her that she "certainly was able to understand." She stated that she did not recall whether she explained to the petitioner that his placement at DeBerry was not a part of his plea, and further noted that it was "fair to say" that the petitioner believed he would be sent to DeBerry. Counsel indicated that she explained to the petitioner that he would be sentenced to thirteen and a half years at one hundred percent service. She testified that she believed the petitioner would be placed at DeBerry without any further action due to his medical condition; nonetheless, she sent a letter to alert the DOC to the possibility of a special needs classification and to "assure the client that [she had] done everything [she could] to aid them in that." Counsel further indicated that the DOC performs its own independent classification. In conclusion, she testified that, until the time of the plea, she was unsure that the petitioner would go through with the plea.

After taking the matter under advisement, the post-conviction court entered an order denying relief, which found that:

> [A]s demonstrated by the plea transcript the Court thoroughly advised the Petitioner of the nature and consequences of his plea during the plea colloquy prior to accepting Petitioner's plea. (citation omitted). The Court explained in detail to Petitioner that the sentence for Count 1 must be served at 100% but that the sentence in Count 2 could possibly be reduced from 100% to 85% release eligibility with good and honor credit. (citation omitted).

> In addition [to] the Court advising Petitioner of the nature and consequences of his plea, Petitioner also advised the Court during his plea colloquy that he and [counsel] had discussed his case. (citation omitted). When the Court explicitly inquired if Petitioner was satisfied with the work [counsel] had performed on his case, Petitioner answered affirmatively . . . . Accordingly, as set forth above, Petitioner has failed to demonstrate by clear and convincing evidence that counsel was ineffective in her communications with him or that he was prejudiced by counsel's alleged deficient performance.

> . . . .

> During his plea hearing, the Court advised Petitioner he would be going to prison, but that the Lois DeBerry Special Needs Facility may be a possibility for him and that he would need to bring his medical conditions to the attention of the TDOC officials as

he was being classified. (citation omitted). Based on the reasons above, the Court finds that Petitioner has not demonstrated by clear and convincing evidence that he was coerced to enter his plea.

The petitioner now appeals to this court, contending that the post-conviction court erred in failing to find that trial counsel rendered ineffective assistance and that the petitioner's pleas were not knowingly and voluntarily entered.

Analysis

I. Ineffective Assistance of Counsel

The petitioner first alleges that counsel was ineffective in failing to accurately convey the consequences of his guilty plea and his sentence of thirteen and a half years at one hundred percent service. When a claim of ineffective assistance of counsel is made under the Sixth Amendment, the petitioner bears the burden of proving that: (1) counsel's performance was deficient, and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings were fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). This standard has also been applied to the right to counsel under Article I, Section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). When a petitioner claims ineffective assistance of counsel in relation to a guilty plea, the petitioner must prove that counsel performed deficiently and, but for counsel's errors, the petitioner would not have pled guilty but would have, instead, insisted upon going to trial. Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court required that the services be rendered within the range of competence demanded of attorneys in criminal cases. In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see also Nichols v. State, 90 S.W.3d 576, 587 (Tenn. 2002).

The petitioner bears the burden of proving by clear and convincing evidence the factual allegations that would entitle petitioner to relief. Tenn. Code Ann. § 40-30-110(f). This court is bound by the post-conviction court's findings of fact unless the evidence preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001).

A review of the plea proceedings reveals that the petitioner discussed the case with counsel and that counsel reviewed the plea petition with him. During the plea colloquy, the petitioner indicated that counsel had done everything he asked of her and had answered all questions to his satisfaction. Generally, the petitioner conveyed that he was well pleased with counsel's representation and noted during the plea hearing that "[she'd] done great." Furthermore, the trial court explicitly stated on more than one occasion that the petitioner's total effective sentence for

the two charges would be thirteen and a half years at one hundred percent service. At the conclusion of the hearing, the petitioner accepted the plea agreement and indicated that he did not have any questions for the trial court. For these reasons, we agree with the post-conviction court that counsel effectively communicated the consequences of the petitioner's plea to him, including his effective sentence of thirteen and a half years.

## II. Unknowing and Involuntary Plea

In his final issue, the petitioner contends that his plea was coerced by trial counsel's assurances that he would be placed in DeBerry due to his medical condition. Our supreme court has stated the following:

> The cases of Boykin v. Alabama and State v. Mackey are the landmark constitutional cases for analyses of guilty pleas. Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969) (federal standard); State v. Mackey, 553 S.W.2d 337 (Tenn. 1977) (state standard). In Boykin, the United States Supreme Court held that before a trial judge can accept a guilty plea, there must be an affirmative showing that it was given intelligently and voluntarily. Id. at 242, 89 S. Ct. at 1711, 23 L. Ed. 2d at 279. In order to find that the plea was entered "intelligently" or "voluntarily," the court must "canvass[ ] the matter with the accused to make sure he has a full understanding of *what the plea connotes* and *of its consequences.*" Id. at 244, 89 S. Ct. at 1712, 23 L. Ed. 2d at 280 (emphasis added).
>
> Likewise, in Mackey, this Court held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea . . . ." 553 S.W.2d at 340.

State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999).

A review of the plea transcript reflects that the trial court advised the petitioner that he was being transported to the DOC for his sentence and that he should alert the facility to his medical condition at the time of his classification. Moreover, at the post-conviction hearing, counsel testified that the DOC does an independent classification of inmates, and she explained to the petitioner that placement is at the discretion of the DOC. Therefore, we conclude that the petitioner was aware that his placement at DeBerry was not a part of his plea agreement and that he knowingly and voluntarily entered into the agreement with that knowledge.

## Conclusion

Based upon the foregoing, we affirm the denial of post-conviction relief.

_____
JOHN EVERETT WILLIAMS, JUDGE